UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-21024-CV-UNGARO
(16-20652-CR-UNGARO)
MAGISTRATE JUDGE REID

ROBERT LEWIS MORGAN,

Movant,

v.

UNITED STATES OF AMERICA,

Respondent.

_____/

## REPORT OF MAGISTRATE JUDGE

### I. Introduction

This Cause is before the Court upon Movant's Third Amended Motion to Vacate pursuant to 28 U.S.C. § 2255 ("the Motion") in which he challenges the constitutionality of his convictions and sentences entered, following a guilty plea, in Case No. 16-20652-CR-UNGARO. [ECF No. 11].

This matter has been referred to the Undersigned for consideration and report on dispositive matters pursuant to S.D. Fla. Admin. Order 2019-2. [ECF No. 23]. For the following reasons, the Motion should be **DENIED**. [ECF No. 11].

### II. Claims

Liberally construing Movant's claims pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Movant claims:

1. Counsel was ineffective for failing to file a motion to dismiss the indictment on the grounds that (a) his confession (b) the

evidence obtained from his homes and (c) and evidence from his cell phone were fruits of the poisonous tree;

2. Counsel was ineffective for failing to challenge the constitutionality of the traffic stop, detention, protective sweep, cell phone seizure, Davis's consent, and his confession;

3. Counsel was ineffective for failing to object to the admission of the evidence obtained from Movant's cell phone during the suppression hearing;

4. Counsel was ineffective for failing to suppress his confession, which Movant claims was coerced and made under duress;

5. Counsel was ineffective for failing "to challenge the veracity of the search warrant";

6. Counsel was ineffective for failing to interview potential witnesses, namely Davis, Azell Moreland, Terrance Moreland, Baker, and Harris, to testify at the suppression hearing;

7. Counsel was ineffective for failing to investigate (a) the detention, transportation, protective, sweep, and cell phone seizure; (b) Davis's consent to open the storage unit; and (c) the voluntariness of his confession;

8. Counsel's ineffectiveness resulted in Movant entering a guilty plea;

9. Counsel was ineffective for failing to investigate and challenge the drug quantity attributable to him.

[ECF No. 11].

## III. Timeliness

Stated broadly, federal prisoners have a one-year period to file a Section 2255 motion. *See* 28 U.S.C. § 2255(f). Here, the Government concedes the timeliness of the instant Motion [ECF No. 16 at 10-11] and, indeed, the Motion is timely.

## IV. Pertinent Factual and Procedural Background

A. Factual Background

The factual background within this Report relies upon the factual proffer [CR ECF No. 35], which Movant stipulated was accurate during his plea colloquy. [CR ECF No. 46 at 18]. Accordingly, the pertinent offense conduct is as follows:

From at least as early as in or around September 2015, and continuing through May 24, 2016, in Miami-Dade County, in the Southern District of Florida and elsewhere, the Defendant conspired with other individuals to import controlled substances namely Alpha-PVP (commonly known as "Flakka") into Miami, Florida, from China, in violation of Title 21, United States Code, Section 963. To that end, the Defendant maintained in his possession fourteen (14) false Florida driver licenses, uses aliases such as "Edward Jones," "Albert Johnson," and "Arthur Wilson," to wire money to China for the purchase of illegal narcotics and enlisted other individuals to wire money to China on his behalf.

In furtherance of the conspiracy, the Defendant communicated via email with Chinese narcotics laboratories and negotiated the importation of various quantities of narcotics, including two parcels containing Flakka that were seized by law enforcement entering the United States on or about May 16, 2016, addressed to "Albert Johnson" at 16200 NW 2nd Avenue, #105, Miami Florida 33169 ("Package 1"), and "Arthur Wilson" at 14350 NW 22nd Avenue, #5, Miami, Florida 33054 ("Package 2"). To facilitate the tracking of these parcels, the Defendant requested to receive cellular telephone notifications from the United States Postal Service regarding all future activity dealing with Package 1 and Package 2.

On or about May 24, 2016, after replacing the Flakka ordered by the Defendant with sham narcotics, law enforcement delivered Package 1 to the Defendant at his residence, located at 16200 NW 2nd Avenue. After accepting the delivery, the Defendant returned inside, before later exiting and driving to a residence in Fort Lauderdale. A short time later, the Defendant exited the residence and law enforcement conducted a traffic stop of his vehicle.

Meanwhile, back at the Defendant's residence, agents observed as a woman ("C.D.") left the residence with a laundry basket that she placed in the trunk of her car. Agents approached her and obtained written consent to search the car and the residence.

In the laundry basket carried out of the residence by C.D., agents recovered a black bag containing the following items belonging to the Defendant:

a) one (1) Ziploc bag containing approx. 15 g of cocaine powder with a blade,

b) numerous empty clear baggies,

c) a scale with cocaine residue,

d) a plate with cocaine residue,

e) a black bag with cocaine residue,

f) approx. $8,126 in bundled US currency, and

g) a Ziploc bag containing the sham Flakka delivered by law enforcement.

The search of the Defendant's residence revealed the following:

h) the empty package delivered by law enforcement,

i) a box with empty baggies, and

j) a box containing fourteen (14) fraudulent Florida Driver Licenses bearing the Defendant's photograph, including licenses bearing the names "Albert Johnson" and "Arthur Wilson," which the Defendant used to order narcotics from China and wire money to China for the purchase of Flakka.

After obtaining a search warrant for the Defendant's cellular telephone, law enforcement discovered numerous emails wherein the Defendant negotiated the purchase and importation of controlled substances into the United States. Subsequent investigation also revealed that the Defendant initiated wire transfers of United States Currency to China, on or about April 8 and April 26, 2016, for the purpose of importing and purchasing Flakka from China.

The investigation further revealed that the Defendant used the identification of other individuals in furtherance of drug trafficking and that twelve (12) of the Florida Driver Licenses possessed by the Defendant on May 24, 2016 contained the names and dates of birth of real persons, including an individual with the initials "E.J." In obtaining a fraudulent Florida Driver License bearing the Defendant's photograph and ["E.J.'s"] personal information, the

4

> Defendant knowingly used the name and date of birth of "E.J."
> without lawful authority.

[CR ECF No. 35].

B. The Indictment, The Motion to Suppress, and the Plea Agreement

In an eight-count indictment, Movant was charged with (1) conspiracy to import flakka in violation of 21 U.S.C. § 963, (2) importation of flakka in violation of 21 U.S.C. § 952(a), (3) attempt to possess with intent to distribute flakka in violation of 21 U.S.C. § 846, (4) possession with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), (5) possession of five or more false identification documents in violation of 18 U.S.C. § 1028(a)(3), (6) aggravated identity theft in violation of 18 U.S.C. 1028A(a)(1), and (7-8) two counts of money laundering in violation of 18 U.S.C. § 1956(a)(2)(A). [CR ECF No. 7]. All counts, excluding Count Six, authorized a 20-year term of imprisonment as detailed in the indictment's penalty sheet. [*Id.*].  As for Count Six, the Court was authorized to impose a maximum of 2 years' imprisonment consecutive to any other sentence. [*Id.*].

Movant, with assistance from his initial attorney Paul Petruzzi ("Counsel"), filed a motion to suppress evidence yielded from the search and seizure of Movant's cellular phone and electronic devices and from the search of the storage unit. [CR ECF No. 20]. After holding a hearing, the Court denied the motion to suppress. [CR ECF Nos. 37, 38].

The following day, Movant entered into a plea agreement. [CR ECF Nos. 34, 45, 46]. However, in exchange for his guilty plea on Counts 1, 6, and 7, the Government would consent to a conditional plea of guilty so that Movant would have an opportunity to appeal the denial of his motion to suppress. [*Id.* at 1]. The appeal would be limited to challenging (1) whether the fourteen false Florida driver licenses were unlawfully discovered by law enforcement and (2) whether law

enforcement unreasonably delayed obtaining a warrant to search Movant's cellular phone. [*Id.* at 1-2].

According to the plea agreement, Movant acknowledged the factual proffer was sufficient to establish jurisdiction and the elements of the offenses to which he was pleading guilty. [*Id.* at 2]. The plea agreement stated Movant "understands and acknowledges that, as to Count 1, the Court may impose a statutory maximum term of imprisonment of up to twenty (20) years…[and], as to Count 6, the Court must impose a mandatory minimum sentence of two [(2)]years' imprisonment, to run consecutive to any sentence imposed as to Counts 1 and 7[.]. [*Id.* at 3]. The plea agreement further provided that "[a]s to Count 7, [Movant] understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to twenty (20) years[.]" [*Id.*].

The plea agreement explained how the Sentencing Guidelines function at sentencing and specifically provided that Movant "understands and acknowledges that the Court has the authority to impose any sentence within [the Sentencing Guidelines] and up to the statutory maximum authorized by law[.]" [*Id.* at 2].

C. <u>Movant's Plea Colloquy</u>

At his plea colloquy, Movant confirmed that he received a copy of the indictment and had a "full opportunity to discusses the charges and [his] case in general, including any defenses that [he] might have, with [his] attorney." [CR ECF No. 46 at 3]. He expressed his satisfaction with Counsel's representation and advice. [*Id.*]. With respect to the plea agreement, Movant confirmed that he signed the agreement and had "a full opportunity to review it and discuss it with" his Counsel. [*Id.* at 4]. Movant agreed his plea was not induced and that there were no additional promises or assurances not mentioned in the plea agreement. [*Id.* at 6-7].

As for the applicable sentencing provisions, Movant affirmed that the maximum sentence the Court could arguably impose was a total of 42 years' imprisonment (i.e., 20 years' imprisonment on Count 1, 20 years' imprisonment on Count 6, and a 2-year mandatory minimum sentence on Count 6 which must be served consecutively). [*Id.* at 7-8]. Movant agreed that any sentence imposed, whether or not his Counsel or any other person indicated a less severe sentence might be imposed, will not provide grounds to withdraw his guilty plea. [*Id.* at 9]. Additionally, Movant confirmed that he had an opportunity to discuss how the Sentencing Guidelines might apply in his case. [*Id.* at 8]. And he agreed that, in some circumstances, the Court could impose a sentence more severe or less severe than what was called for by the Sentencing Guidelines. [*Id.* at 9].

The Court detailed several rights that Movant waived by entering a guilty plea, namely the right to trial and other rights associated with a trial. [*Id.* at 10-11]. The Court also explained that, if accepted, his guilty plea would result in the loss of valuable civil rights, such as the right to possess a firearm, the right to vote, the right to hold public office, and the right to serve on a jury. [*Id.* at 7]. Movant agreed that he understood those consequence. [*Id.* at 7, 11].

The Court also inquired as to the effect of the conditional plea in the event that Movant succeeded on appeal, inquired whether the factual proffer was accurate, and confirmed Movant wished to proceed with entry of his guilty plea. The pertinent section of this exchange was as follows:

> [THE COURT: [T]his is sort of unusual to do a conditional plea where the motion to suppress is not case dispositive.
>
> MR. OSBORNE: I agree it's unusual, Your Honor.
>
> THE COURT: And I don't know what my position would be if we found ourselves back here and had to try Mr. Morgan.

MR. PETRUZZI: Well, I can say a couple of things, Your Honor. He certainly wouldn't [necessarily] be in the same position with the suppressed evidence with respect to the aggravated identity theft counts.

THE COURT: Right.

MR. PETRUZZI: That's an additional mandatory two.

THE COURT: Right.

MR. PETRUZZI: And that was a bone of contention all along.

THE COURT: Right.

MR. PETRUZZI: And he wouldn't necessarily be in the same position with respect to the money laundering counts.

THE COURT: Right.

MR. PETRUZZI: Because that evidence came from the cell phone.

THE COURT: Right.

MR. PETRUZZI: He also wouldn't necessarily be in the same position with a potentially expanded amount of narcotics. Rather, it would be limited to a controlled delivery, which would be a far different situation on the guidelines.

THE COURT: Well, I don't know. I mean, this is what you're telling me. I really don't know. I haven't thought it through. I mean, it's a proffer. He's agreeing the Government could prove these facts.

MR. PETRUZZI: Subject to the Court's ruling, of course. Had the matter proceeded to trial, as we stand here today, that's what the Government could prove.

Now were the Court to have suppressed the evidence, say, the identities, for example, then we wouldn't be able to prove the possession of those identities.

THE COURT: Okay. Look –

MR. PETRUZZI: I get what you're saying.

THE COURT: [Alright]. We can go ahead. I'm just telling you I make no promises as to what the effect of this is if it comes back.

MR. PETRUZZI: And I haven't either. Just so that the record is very clear, I haven't made any assurances on way or the other what would happen in the Eleventh Circuit, one way or the other what would happen were the Eleventh Circuit to remand, with or without instructions.

THE COURT: And what the impact of that would be –

MR. PETRUZZI: That's right.

THE COURT: -- on the Government, on the Court, on anything else.

MR. PETRUZZI: On any future evidentiary rulings, on any future election by the Government to prosecute additional charges perhaps.

THE COURT: Okay. Do you understand all of that, Mr. Morgan?

THE DEFENDANT: Yes.

THE COURT: Are you sure?

THE DEFENDANT: Kind of.

THE COURT: Huh?

THE DEFENDANT: Kind of.

THE COURT: So I'm about to ask you about this factual proffer, right? I think that's where I left off. I asked you whether you understand that by entering your plea that you were giving up your right to a trial and the other rights that I went over.

Did you understand that?

THE DEFENDANT: Yes.

THE COURT: So now, the next order of business is to look at the factual proffer in which Mr. Osborne has set forth the facts that he says he would be able to prove beyond a reasonable doubt at trial to establish your guilt as to Counts 1, 6, and 7, which includes not only the flakka but also the money laundering and the aggravated identity theft, which are, arguably – I don't know that I agree with it necessarily – but arguably encompassed by the motion to suppress that we had the hearing on yesterday.

THE DEFENDANT: Yes, Your Honor.

THE COURT: So, if the Eleventh Circuit disagreed with me, the appellate court disagreed with me, and the case came back, what I

want you to understand is I do not know what impact that ruling would have on the Government's ability to prosecute you for all of the charges and what impact that would have on the Government's ability to use what's in this factual proffer against you.

Do you understand that?

THE DEFENDANT. Yes.

THE COURT: Do you still want to go ahead?

THE DEFENDANT: Yes.

THE COURT: Okay. So did you read the proffer before you signed it?

THE DEFENDANT: Yes, I did.

THE COURT: Do you agree with each and every fact contained in the proffer?

THE DEFENDANT: Yes.

THE COURT: Okay. And now, how do you plead to the charges in Counts 1, 6, and 7: Guilty or not guilty?

THE DEFENDANT: Guilty.

[CR ECF No. 46 at 13-18].

D. Counsel's Withdrawal

Less than one month later, Counsel filed a motion to withdraw citing "irrevocable differences" and Movant's request that Counsel withdraw as the basis for his motion. [CR ECF No. 39]. The Court referred the motion to withdraw to a Magistrate Judge, who granted Counsel's withdrawal as counsel after holding a hearing. [CR ECF Nos. 40, 43]. The Federal Public Defender was then substituted and appointed as Counsel. [CR ECF No. 43].

E. The Presentence Investigation Report ("PSI")

According to the PSI, the total offense level was 34. [PSI ¶ 35]. With a criminal history category of IV, the guideline imprisonment range was 210 to 262 months' imprisonment. [PSI ¶

88]. However, Count Six required a 2-year term of imprisonment to run consecutive to any other term of imprisonment. [PSI ¶¶ 87-88].

F. <u>The Motion to Withdraw the Guilty Plea</u>

A stipulation for substitution of counsel was filed, seeking withdrawal of the Federal Public Defender as counsel of record in order to substitute Michael Rosen [CR ECF No. 49], which was granted. [CR ECF No. 52].

Movant, with assistance from his substituted Counsel, filed a motion to withdraw the guilty plea. [CR ECF No. 56]. The motion claimed Movant's initial Counsel "failed to provide legally adequate representation preparing for and presenting the Motion to Suppress[.]" [*Id.* at 2]. The motion also emphasized that this particular argument was not an argument properly arising under 28 U.S.C. § 2255 but as factors allowing Movant to meet his burden under Fed. R. Crim. P. 11(d)(2)(B). [*Id.*]. The motion to withdraw further argued that Movant did not fully understand the consequences of his guilty plea because of the exchange concerning how the conditional guilty plea would play out if Movant prevailed on appeal. [*Id.* at 8-10].

The Court denied the motion to withdraw the guilty plea. [CR ECF No. 64]. First, as to the argument concerning Counsel's performance, the Court explained an attorney's "reliance on particular lines of defense to the exclusion of others…is a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself was unreasonable. [*Id.* at 2] (quoting *United States v. Chandler*, 218 F.3d 1305, 1318 (11th Cir. 2000)). The Court further stated, "which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." [*Id.*] (quoting *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc)). With those principles in mind, the Court found the motion "in no way establishes that the strategic decisions at issue were unreasonable" [*id.* at 3] and further noted that

the presumption of reasonableness was "even stronger" because the criticisms of Counsel's performance were against "an experienced criminal defense attorney." [*Id.* at 3 n.7].

Second, in denying the motion to withdraw, the Court re-affirmed that Movant's plea was, in fact, knowing and voluntary. [*Id.* at 3]. While Movant argued that there was a moment during the colloquy indicating Movant did not understand the effect of his conditional guilty plea if he prevailed on appeal, Movant "neglected to include the portion of the transcript in which the Court directly addressed [Movant] regarding the possible effects of a successful appeal[.] [*Id.* at 4].

G. The Judgment of Convictions and Sentences and Movant's Appeal

The Court entered its judgment adjudicating Movant guilty of Counts One, Six, and Seven. [CR ECF No. 68]. On Counts One and Seven, Movant was sentenced to a term of 151 months' imprisonment to be served concurrently and 24 months' imprisonment as to Count Six to be served consecutively to Counts One and Seven, meaning the total term was 175 months' imprisonment. [*Id.*]. The Court also imposed a supervisory release term of life as to Count One, 1 year as to Count Six, and 3 years as to Count Seven all to run concurrently. [*Id.*].

H. Movant's Appeal

On appeal, the U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") found many of Movant's arguments were waived, as they were not preserved as part of the conditional guilty plea. *See United States v. Morgan*, 713 F. App'x 829, 830-31 (11th Cir. 2017). Any arguments that were properly before the Eleventh Circuit were affirmed. *See id.* at 832.

**V. Standard of Review**

Section 2255 states in relevant part that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence

was imposed in violation of the Constitution...may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a).

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232-33 (11th Cir. 2004) (citations and internal quotations omitted). If a court finds a claim under § 2255 to be valid, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

**VI. Discussion**

A. <u>Generally Applicable Substantive Law: Ineffective Assistance</u>

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate both (1) that his counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687. An ineffective assistance of counsel claim may be raised with respect to errors made by trial counsel or direct appeal counsel, and both are governed by *Strickland*. *See, e.g.*, *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016).

The deficiency prong is met if no competent counsel would have taken the action that trial counsel took during the proceedings. *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000). Regarding the prejudice prong, it is met if, but for counsel's deficient performance, the outcome of the proceeding would have been favorable. *Strickland*, 466 U.S. at 694. And yet, the error must also be "so serious" that the error "deprive[d] the defendant of a fair trial, a trial whose result is reliable[,]" in order to satisfy the prejudice prong. *Strickland*, 466 U.S. at 687.

Pertinent to this case, "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence." *Id.* To establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (internal quotations omitted).

B. Ground One

In Ground One, Movant claims his Counsel was ineffective for failing to file a motion to dismiss the indictment on the grounds that (a) his confession (b) the evidence obtained from his

homes and (c) cell phone were fruits of the poisonous tree. [ECF No. 11 at 5]. Because of those errors, Movant claims he would have refused to enter a guilty plea and instead insisted on going to trial. [*Id.*].

Liberally construed, Movant's claim assumes the district court could have considered the sufficiency of the evidence on a motion to dismiss a criminal indictment. Because the Court has no authority to dismiss a criminal indictment by considering the sufficiency of the evidence, *see United States v. Salman*, 378 F.3d 1266, 1268 (11th Cir. 2004), Movant cannot show Counsel was ineffective. *See Strickland*, 466 U.S. at 694 (explaining prejudice requires that, but for the challenged conduct, the outcome of the proceedings would have been more favorable); *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim.").

C. Ground Two

As for Ground Two, Movant contends Counsel was ineffective for failing to challenge the constitutionality of the traffic stop, detention, protective sweep, cell phone seizure, Davis's consent, and his confession. [ECF No. 11 at 6]. According to Movant, but for those errors, he would have not pled guilty and insisted on going to trial. [*Id.*].

*i. The Traffic Stop*

The Fourth Amendment provides that persons must be free from unreasonable seizures. *See* U.S. Const., amend. IV. Persons are "seized" when their freedom of movement has been restrained in such a manner, either by force or a show of authority, that a reasonable person would conclude they are not free to leave under the circumstances. *E.g.*, *United States v. Mendenhall*, 446 U.S. 544, 553-54 (1980).

"A traffic stop constitutes an unreasonable seizure if it is not supported by reasonable suspicion or probable cause." *United States v. House*, 684 F.3d 1173, 1199 (11th Cir. 2012). Conversely, "a traffic stop is reasonable under the Fourth Amendment when supported by probable cause or reasonable suspicion even if it is inconsistent with agency policy or state law." *Id.* (internal citations omitted). "If the scope of the traffic stop exceeds that of an 'investigative stop of limited duration' it constitutes an unreasonable seizure unless it is supported by probable cause." *Id.* (quoting *United States v. Acosta*, 363 F.3d 1141, 1145-46 (11th Cir. 2004)).

"Probable cause requires that the facts and circumstances within an officer's knowledge and of which the officer has reasonably trustworthy information be sufficient to warrant a prudent man in believing that the person seized is guilty of a crime." *Id.* (brackets and internal quotation marks omitted).

Here, a reasonable attorney could have inferred that there was probable cause to support the traffic stop in this case. Based on Movant's colloquy statements affirming the veracity of the factual proffer, law enforcement observed Movant accepting the delivery of the package containing the fake Flakka at the target location. Although Movant stated it was for his "cousin" when he accepted the delivery, Movant returned inside of the residence and then left to another location. At that new location, Movant was seen handing a black bag to an unknown individual. Law enforcement conducted the traffic stop once Movant departed that location. Because Movant accepted the swapped package at one of the target locations and was seen leaving a black bag with an unknown individual soon after, reasonable attorneys could conclude that a prudent officer would think Movant conspired or attempted to distribute Flakka.

As such, reasonable attorneys could conclude the traffic stop was supported by probable cause. Movant has, therefore, not met his burden in showing Counsel's performance was

objectively unreasonable and, therefore, deficient. *See Chandler*, 218 F.3d at 1313-15.After all, "because counsel's conduct is presumed reasonable, for [Movant] to show that the conduct was unreasonable, [he] must establish that no competent counsel would have taken the action that his counsel did take." *See id*. at 1315. An attorney could reasonably reach that conclusion. Therefore, this claim should be denied, and the Court need not address the prejudice prong. *See Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1100 (11th Cir. 2007).[1]

### ii. The Detention and the Protective Sweep

Although Movant claims Counsel should have challenged the constitutionality of his detention and of the protective sweep itself, he has not specified what grounds should have been argued by Counsel. Movant, of course, is subject to a heightened pleading standard. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011). And the liberal construction afforded to *pro se* pleadings does not authorize the Court to rewrite them. *See, e.g.*, *Logan v. Hall*, 604 F. App'x 838, 839 (11th Cir. 2015). Because entertaining these two subclaims any further (*i.e.*, the detention and the protective sweep challenges) would require the Court to construct arguments on Movant's behalf, Movant's allegations are left as vague and conclusory. Movant, therefore, cannot meet his burden of showing Counsel acted deficiently. *See Saunders v. United States*, 278 F. App'x 976, 979 (11th Cir. 2008) (explaining "unsupported generalizations" on an ineffective-assistance claim fails to provide "facts that, if true, would entitle [the movant] to relief"). The Court need not address the prejudice prong. *See Dingle*, 480 F.3d at 1100.

### iii. The Cell Phone Seizure and the Adequacy of Davis's Consent

---

[1] Worth mentioning, Movant has not explained why the factual proffer is inaccurate with respect to its articulation of what transpired prior to and during the traffic stop.

Liberally construed, this next subclaim shows Movant claims Counsel failed to challenge the seizure of his cell phone and Davis's consent to open the storage unit. This claim is refuted by the record. [CR ECF No. 20]. Accordingly, as the record conclusively refutes this claim, Counsel was not ineffective. *See Saunders*, 278 F. App'x at 979.

### iv. Movant's confession

As a reminder, Movant also alleges Counsel failed to challenge the constitutionality of his confession. Movant, however, failed to detail on what constitutional grounds Counsel should have relied. Again, this claim is too vague and conclusory to establish that Counsel was ineffective. *See Saunders v. United States*, 278 F. App'x at 979.

Even if the Court were to entertain this claim further, Movant cannot show Counsel performed deficiently. Counsel's performance is presumed to be reasonable. *See Chandler*, 218 F.3d at 1315. And Counsel's performance is deficient only if no attorney would have acted as Counsel did. *See id.*

Here, the record shows Counsel attacked the confession's reliability because there were alleged deficiencies in the process administered by law enforcement in its efforts to procure Movant's confession. Critically, the motion to suppress focused its arguments on challenging "(1) the fruits of the unlawful search and seizure of Mr. Morgan's cellular phone and electronic devices and (2) the fruits of the unlawful search of Mr. Morgan's locked storage." [CR ECF No. 20]. Had the motion to suppress been granted, Movant could have arguably contended that his confession left the Government with an insufficient basis to support a conviction because of the confession's limited reliability. *See, e.g.*, *United States v. Morales*, 893 F.3d 1360, 1370–71 (11th Cir. 2018). Counsel's conduct, therefore, reflects that he selected to raise some arguments to the exclusion of others pursuant to a strategy. Competent attorneys might forego a direct constitutional challenge

of a confession by instead probing at its reliability while focusing on suppressing documentary and physical evidence. Accordingly, Movant cannot meet his burden of showing Counsel performed deficiently. *See Strickland*, 466 U.S. at 688 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."). The Court need not address the prejudice prong. *See Dingle*, 480 F.3d at 1100.

D. <u>Ground Three</u>

Ground Three is an ineffective-assistance claim contending Counsel failed to object to the admission of the evidence obtained from Movant's cell phone during the suppression hearing. [ECF No. 11 at 8]. According to Movant, Counsel's failure to object resulted in the evidence not being suppressed and, therefore, influenced Movant's decision to plead guilty. [*Id.*]. Movant explicitly alleges he would have insisted on proceeding to trial but for Counsel's error. [*Id.*].

Movant failed to provide sufficient allegations to support this claim. Movant's allegations are subject to a heightened pleading standard in this proceeding. *See Borden*, 646 F.3d at 810. His allegations do not specify on what grounds Counsel should have objected. The Court, of course, has no authority to rewrite a deficient pleading, as it would amount to serving as *de facto* counsel. *See, e.g.*, *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014). Because Movant has clarified the grounds for the missed objection, he has failed to meet his burden of showing Counsel was ineffective. *See Saunders*, 278 F. App'x at 979.

E. <u>Ground Four</u>

Ground Four is another ineffective-assistance claim contending Counsel failed to suppress his confession, which Movant claims was coerced and made under duress. [ECF No. 11 at 9]. Movant states he testified that his confession was procured by coercion or duress during the

suppression hearing. [*Id.*]. Had Counsel successfully suppressed his confession, Movant contends he would have proceeded to trial. [*Id.*].

The Government argues this claim is belied by the record because Counsel, in fact, challenged the voluntariness of Movant's confession at the suppression hearing. [ECF No. 16 at 17 (citing [ECF No. 16-3]). But in truth, Counsel could not directly challenge the voluntariness of Movant's confession at the suppression hearing because that issue was never raised in the motion to suppress itself. [CR ECF No. 20].

As previously mentioned, the motion to suppress challenged the evidence obtained from Movant's electronic devices and Davis's authority over the storage unit. [CR ECF No. 20]. By narrowing the scope of the motion to suppress, while challenging the confession's reliability at the hearing [ECF No. 16-3], the record indicates that Counsel's strategy was to attack the fruits of the documentary and physical evidence in order to leave the Government with a confession with limited reliability as to how it was procured.[2] Because reasonable attorneys might pursue that strategy, Movant cannot meet his burden of showing Counsel acted deficiently. *See Chandler*, 218 F.3d at 1315; *see also Strickland*, 466 U.S. at 689 ("There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."). The Court need not address the prejudice prong. *See Dingle*, 480 F.3d at 1100.

F. Ground Five

Ground Five is an ineffective-assistance claim arguing Counsel failed "to challenge the veracity of the search warrant." [ECF No. 11 at 11]. According to Movant, there was an "issue

---

[2] The Undersigned notes that Movant's conceded the content of his confession was accurate but only disagreed with how law enforcement procured a truthful account of his conduct. [CR ECF No. 45 at 146-47].

[with] the information used in the affidavit to obtain the search warrant." [*Id.*]. Had Counsel succeeded, as Movant claims, it would have led to the evidence from his cell phone being suppressed and, in turn, he would have not pled guilty and insisted on going to trial. [*Id.*].

This claim is too vague to warrant relief. Without allegations defining the parameters of Counsel's alleged error, Movant has not provided sufficient allegations so that he can meet his burden of proving Counsel was ineffective. *See Saunders*, 278 F. App'x at 979.

G. Ground Six

As for Ground Six, Movant claims Counsel was ineffective for failing to interview potential Witnesses, namely Davis, Azell Moreland, Terrance Moreland, Baker, and Harris, to testify at the suppression hearing. [ECF No. 11 at 11]. According to Movant, Davis would have testified that agents coerced Movant's confession, and the other witnesses would have testified that an agent kicked in a padlocked room in order to exit the room with Movant's cell phone. [*Id.*]. By failing to call these witnesses at the suppression hearing, Movant asserts his best defenses were lost, causing him to enter a guilty plea rather than proceeding to trial. [*Id.*].

` The presumption of Counsel's adequate performance is particularly strong as to this claim because "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004) (internal quotation marks omitted). "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland* 466 U.S. at 690–91. "By its nature, 'strategy' can include a decision not to investigate." *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994). Put bluntly, "no absolute duty exists to investigate." *See Chandler*, 218 F.3d at 1317–18.

Again, the motion to suppress focused its arguments on suppressing "(1) the fruits of the unlawful search and seizure of Mr. Morgan's cellular phone and electronic devices and (2) the fruits of the unlawful search of Mr. Morgan's locked storage." [CR ECF No. 20]. Had the motion to suppress been granted, Movant could have arguably contended that his confession left the Government with an insufficient basis to support a conviction.  *See, e.g.*, *Morales*, 893 F.3d at 1370–71. Viewed through that lens and given the strong presumption that Counsel's performance was reasonable, Movant cannot meet his burden to showing Counsel performed deficiently for not directly challenging the confession. *See Chandler*, 218 F.3d at 1315. As to the challenge regarding law enforcement kicking in a padlocked door, Movant has not provided any explanation for why Counsel's strategy was unreasonable. *Conklin*, 366 F.3d at 1204. The Court need not address the prejudice prong, as Movant cannot obtain relief on this claim. *See Dingle*, 480 F.3d at 1100.

## H. Ground Seven

In Ground Seven, Movant claims Counsel was ineffective for failing to conduct a pre-trial investigation. [ECF No. 11 at 12]. Counsel allegedly failed to investigate (a) the detention, transportation, protective, sweep, and cell phone seizure; (b) Davis's consent to open the storage unit; and (c) the voluntariness of his confession. [*Id.*]. Had Counsel adequately investigated and prepared for the motion to suppress hearing, Movant alleges he would not have needed to enter a guilty plea and would have insisted on going to trial. [*Id.*].

As to the first set of subclaims, Movant provides no details as to what Counsel allegedly failed to investigate about his detention, the transportation to a new location, the protective sweep, or the cell phone seizure. Counsel demonstrated at the motion to suppress hearing a solid understanding of what Movant claimed transpired. *See generally* [CR ECF No. 45 at 15-24, 30-38, 56-95, 98-109, 114-32, 146-47, 153-62]. In fact, at least with respect to the seizure of his cell

phone, Counsel explicitly challenged the constitutionality of seizing Movant's cellular phone within the motion to suppress. [CR ECF No. 20]. Thus, because Movant has not explained how Counsel's investigation was deficient in light of his demonstrated understanding of the facts of the case, Movant's allegations are too vague and conclusory to prove Counsel was ineffective. *See Saunders*, 278 F. App'x at 979.

Regarding the second subclaim, it is refuted by the record. The motion to suppress [CR ECF No. 20] and the hearing demonstrate Counsel attacked Davis's authority to consent to having law enforcement open the storage unit. [CR ECF No. 45 at 37, 104-05, 126-27]. Movant fails to clarify what more should have been investigated and how that additional information would have made a difference at the suppression hearing. Without such allegations, Movant has not met his burden at showing his Counsel was ineffective. *See Saunders*, 278 F. App'x at 979.

As to the final subclaim, it appears duplicative of an argument Movant raised in Ground Six. For the reasons previously stated, this subclaim should be denied.

I. Ground Eight

In Ground Eight, Movant claims his guilty plea was the result of Counsel's ineffective performance. [ECF No. 11 at 12]. Liberally construed, Movant contends he believed the maximum sentence he could face was 140 years' imprisonment and, therefore, he entered his guilty plea to avoid the risk of that sentence. [*Id.*]. Movant claims Counsel never advised him of the maximum sentence that could be imposed, meaning he entered his guilty plea unintelligently. [*Id.*].

As previously stated, *Strickland* applies to guilty pleas. *Hill*, 474 U.S. at 58. "In the context of guilty pleas, the first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence." *Id.* But to establish prejudice, "the defendant must show

that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (internal quotations omitted).

As an initial matter, Movant's claim is contradicted by the record. He asserts that he understood that losing at trial might subject him to a maximum sentence of 140 years' imprisonment. [ECF No. 11 at 12]. At his change of plea hearing, however, he affirmed that he had read and understood the plea agreement.[3] The plea agreement affirms that the maximum sentence authorized by law on Counts 1 and 7 was 20 years' imprisonment and that Count 6 required a 2-year term of imprisonment that would run consecutive to any other sentence imposed.

Colloquy statements are entitled to a strong presumption of truth. *See United States v. Nelson*, 442 F. App'x 496, 497 (11th Cir. 2011). Movant has not stated why his statements made at the change of plea hearing are not reliable.

Movant is subject to a heightened pleading standard in this proceeding. *See Borden*, 646 F.3d at 810. Without allegations explaining why his after-the-fact allegations are more reliable than his presumptively true colloquy statements, the Court must presume Movant actually understood his sentencing exposure. Because the Court should accept that Movant understood his sentencing exposure, his allegations indicating he would have insisted on going to trial fail to satisfy *Strickland* prejudice. *See Hill*, 474 U.S. at 60. Moreover, without any allegations refuting the verity of his colloquy statements, Movant lacks a factual predicate to support this claim. In sum, this claim should be denied.

J. <u>Ground Nine</u>

---

[3] Worth mentioning, Movant alleged that he never read the factual proffer. Movant's after-the-fact allegations that he never read the factual proffer contradict his colloquy statements. Moreover, because Movant does not allege that he never read the *plea agreement*, this further shows that he had notice of his sentencing exposure before entering his guilty plea. (emphasis added).

As for Ground Nine, Movant claims Counsel was ineffective for failing to investigate and challenge the drug quantity attributable to him. [ECF No. 11 at 13]. Movant claims that, a more onerous sentence was imposed because of those errors. [*Id.*]. He asserts the PSI mistakenly calculated that he had about 19 kilograms of Flakka when he had something closer to 2 kilograms.

The PSI calculated an estimated total of 19.128 kilogram of Flakka. [PSI ¶ 18]. That figure was calculated after reviewing Movant's e-mails ordering and subsequently wiring money to China for Flakka. [*Id.*]. Some of the emails specifically mentioned included:

- In June 2015, Movant wired money to buy about **100 grams** of Flakka for $200 and **250 grams** of Flakka for $450. [PSI ¶ 14].

- In July 2015, Movant wired money to buy **500 grams** of Flakka for $880. [*Id.*].

- In August 2015, Movant wired $880 to buy **500 grams** of Flakka and $1,400 to buy **one kilogram** of Flakka. [*Id.*].

- In October 2015, Movant made two transactions of $1,400 for **two kilograms** of Flakka. He also bought **500 grams** of Flakka for $800 that month. [PSI ¶ 16].

- In November 2015, Movant wired $1,800 for **one kilogram** of Flakka, $400 for **250 grams** of Flakka, and $550 for **250 grams** of Flakka. [*Id.*].

- During December 2015, Movant's nephew, an unindicted co-conspirator, wired $1,500 for **one kilogram** of Flakka. [*Id.*].

- In January 2016, Movant wired $1,200 for **one kilogram** of Flakka, and ordered **two more kilograms** of Flakka via email. [*Id.*].

- In February 2016, Movant made two payments of $1,400 for **two kilograms** of Flakka. [PSI ¶ 17].

- In March 2016, Movant sent $230 for **28 grams** of Flakka and $2,200 for **one kilogram** of Flakka. [*Id.*].

- In April 2016, Movant made two payments of $4,920 for two separate orders of two kilograms of Flakka, therefore, totaling **four kilograms** of Flakka. [PSI ¶ 17-18].

- Between June 2016 through July 2016, Movant sent $4,920 for a total of **two kilograms** of Flakka. [PSI ¶ 18].

Based on those emails and wiring information, the record contains enough information to estimate at least 19 kilograms of Flakka were attributable to Movant. Movant fails to detail how Counsel could have investigated or challenged the quantity attributable to him. Movant does not even contest the veracity of the Government's information, which formed the estimate articulated in the PSI. Likewise, Movant does not rely upon a legal provision which might undermine the drug quantity at issue. Because Movant's vague and conclusory allegations do not weaken or even meaningfully challenge the veracity of the facts stated in the PSI, Movant failed to meet his burden of proving either of his attorneys were ineffective. *See Saunders*, 278 F. App'x at 979 (explaining "unsupported generalizations" on an ineffective-assistance claim fails to provide "facts that, if true, would entitle [the movant] to relief"); *see also Thomas v. Sec'y, Fla. Dep't of Corr.*, 257 F. App'x 179, 182 (11th Cir. 2007) (resolving a claim similarly in a § 2254 context).[4]

### VII. Evidentiary Hearing

Movant has the burden of establishing the need for an evidentiary hearing, and he would only be entitled to a hearing if his allegations, if proved, would establish his right to collateral relief. *See Diveroli v. United States*, 803 F.3d 1258, 1263 (11th Cir. 2015).

---

[4] As a final note, in what appears to be Movant's memorandum in support [ECF No. 11 at 19]. Movant asserted that he "specifically instructed" Counsel to take the actions addressed within the Motion. [*Id.*]. In support, Movant claims *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) holds that an attorney is *per se* ineffective if they fail to file a motion that was specifically requested by the defendant. But *Flores-Ortega*'s discussion on per se ineffectiveness is limited to the filing of a notice of appeal. *See id.* at 477. Likewise, Movant's reference to a duty to consult are inapplicable under *Flores-Ortega* because the duty to consult is also only in relation to the filing of a notice of appeal. *See id.* at 480. Movant does not allege that his Counsel failed to file a notice of appeal. And, indeed, Movant appealed. To the extent Movant claims Counsel was ineffective for not filing various motions or objections on the matters previously mentioned within this Report, therefore, such a claim would fail for the same reasons articulated within this Report.

However, district courts "need not hold a hearing if the allegations are 'patently frivolous,' based upon 'unsupported generalizations,' or 'affirmatively contradicted by the record.'" *Diveroli*, 803 F.3d at 1263 (relying upon *Winthrop-Redin*, 767 F.3d at 1216); *cf. Schriro v. Landrigan*, 550 U.S. 465, 473-75 (2007) (holding that if the record refutes the factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing in a § 2254 context).

Here, an evidentiary hearing is not warranted.

## VIII. Certificate of Appealability

A prisoner seeking to appeal a district court's final order denying his petition for writ of habeas corpus [or motion to vacate] has no absolute entitlement to appeal, but must obtain a certificate of appealability ("COA"). *See* 28 U.S.C. § 2253 (c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if the prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253 (c)(2). To merit a certificate of appealability, prisoners must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935-36 (11th Cir. 2001).

Where a district court denies a habeas action solely on procedural grounds, the prisoner must show that reasonable jurists would find the district court's assessment of the constitutional claims and procedural ruling debatable or wrong to merit a certificate of appealability. *See Slack*, 529 U.S. at 474, 484.

In this case, there is no basis to issue a certificate of appealability.

## IX. Conclusion

Based on the foregoing, it is recommended that the Motion to Vacate be **DENIED**. [ECF No. 11]. In addition, an evidentiary hearing should be **DENIED**, and this Court should **NOT ISSUE** a certificate of appealability. Accordingly, this case should be **CLOSED**.

Objections to this report may be filed with the District Court Judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the District Court Judge of an issue covered in this Report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the District Court Judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

Signed this 23rd day of October, 2020.


_____
UNITED STATES MAGISTRATE JUDGE

cc: Robert Lewis Morgan
13829-104
Coleman Low
Federal Correctional Institution
Inmate Mail/Parcels
Post Office Box 1031
Coleman, FL 33521
PRO SE

Jason A. Reding
U.S. Attorney's Office
99 NE 4th Street
Suite 616
Miami, FL 33132
(305)961-9202
Fax: (305)536-4699
Email: Jason.reding@usdoj.gov

Noticing 2255 US Attorney
Email: usafls-2255@usdoj.gov